# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY PEARCE, individually and on behalf of all others similarly situated,<br><br>  *Plaintiff*,<br><br>  v.<br><br>MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual,<br><br>  *Defendants*. | Case No. 18-cv-00306<br><br>Hon. Robert F. Kelly |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

**INTRODUCTION** ...................................................................................................................1

**FACTUAL BACKGROUND**..................................................................................................2

**ARGUMENT**...........................................................................................................................4

**I.    PEARCE'S CLAIMS RELATE TO KARPELES'S MINIMUM CONTACTS WITH PENNSYLVANIA** ...........................................................................................5

**II.   THE EXERCISE OF JURISDICTION DOES NOT OFFEND NOTIONS OF FAIR PLAY OR SUBSTANTIAL JUSTICE** ........................................................................10

**CONCLUSION** .....................................................................................................................12

# **TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
    480 U.S. 102 (1987)..................................................................................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).........................................................................................5, 10, 12

*Calder v. Jones*,
    465 U.S. 783 (1984)....................................................................................................5

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)....................................................................................................8

*Walden v. Fiore*,
    134 S. Ct. 1115 (2013)................................................................................................5

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)....................................................................................................5

**United States Courts of Appeals Cases**

*Ackourey v. Sonellas Custom Tailors*,
    573 F. App'x 208 (3d Cir. 2014)..................................................................................6

*Baskin-Robbins Franchising LLP v. Alpenrose Dairy, Inc.*,
    825 F.3d 28 (1st Cir. 2016).......................................................................................12

*FDIC v. Deglau*,
    207 F.3d 153 (3d Cir.2000).........................................................................................8

*Felland v. Clifton*,
    682 F.3d 665 (7th Cir. 2012) ....................................................................................11

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998)........................................................................................5

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007)........................................................................................7

*Metcalfe v. Renaissance Marine, Inc.*,
    566 F.3d 324 (3d Cir. 2009)....................................................................................4, 5

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   496 F.3d 312 (3d Cir. 2007)..................................................................................................5

*Patterson by Patterson v. FBI*,
   893 F.2d 595 (3rd Cir. 1990) ...............................................................................................4

*Pennzoil Prods. Co. v. Colelli & Assocs.*,
   149 F.3d 197 (3d Cir. 1998)..................................................................................................4

*Spuglio v. Cabaret Lounge*,
   344 F. App'x 724 (3d Cir. 2009)..........................................................................................6

*Streit v. Metro. Cas. Ins. Co.*,
   863 F.3d 770 (7th Cir. 2017) ..............................................................................................11

*Toys "R" Us, Inc. v. Step Two S.A.*,
   318 F.3d 446 (3rd Cir. 2003) ..........................................................................................6, 10

## United States District Court Cases

*Ackourey v. Andre Lani Custom Clothiers*,
   No. CIV.A. 12-1686, 2012 WL 5944677 (E.D. Pa. Nov. 28, 2012) ..............................6, 7

*Britax Child Safety, Inc. v. Nuna Int'l B.V.*,
   321 F. Supp. 3d 546 (E.D. Pa. 2018) .................................................................................10

*Ceelite Techs., LLC v. SeeLite, LLC*,
   No. CV 15-4342, 2016 WL 9738109 (E.D. Pa. Oct. 5, 2016)............................................5

*Franklin Mint Co. v. Camdex Int'l, Inc.*,
   No. CIV. A. 99-4170, 2000 WL 274010 (E.D. Pa. Mar. 10, 2000)..................................11

*Gentex Corp. v. Abbott*,
   978 F. Supp. 2d 391 (M.D. Pa. 2013) .................................................................................9

*Greene v. Mizuho Bank Ltd.*,
   206 F. Supp. 3d 1362 (N.D. Ill. 2016) ................................................................................3

*Greene v. Mizuho Bank, Ltd.*,
   No. 14 C 1437, 2018 WL 2735112 (N.D. Ill. June 7, 2018) ..........................................2, 3

*Greene v. Karpeles*,
   No. 14 C 1437, 2019 WL 1125796 (N.D. Ill. Mar. 12, 2019) ................................. passim

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009)..................................................................................4

*Isaacs v. Trs. of Dartmouth College*,
    No. 13-5708, 2014 WL 4186536 (E.D. Pa. Aug. 25, 2014) .................................................4

*O'Connor v. Sandy Lane Hotel Co.*,
    No. 04-cv-2436, 2005 WL 994617 (E.D. Pa. Apr. 28, 2005) ..............................................7

*S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*,
    79 F. Supp. 2d 537 (E.D. Pa. 1999) ....................................................................................6

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F.Supp. 1119 (W.D. Pa. 1997) ..................................................................................6, 7

**State Courts of Appeals**

*Messersmith v. Am. Fid. Co.*, 232 N.Y. 161, 133 N.E. 432, 433 (1921) ......................................11

**Statutory Provisions**

42 Pa. Cons. Stat. Ann. § 5322 .......................................................................................................4

**Miscellaneous Authorities**

Magdalena Osumi & Ryusei Takahashi, *Mt. Gox bitcoin exchange founder Mark Karpeles gets suspended term for falsifying data but is cleared of embezzlement*, The Japan Times (Mar. 15, 2019), https://www.japantimes.co.jp/news/2019/03/15/national/crime-legal/mtgox/#.XMODvpNKhTY .......................................................................................11

## INTRODUCTION

As Defendant Mark Karpeles notes, this case overlaps considerably with litigation proceeding in the Northern District of Illinois, which also addresses the collapse of the Mt. Gox bitcoin exchange. (Mot. at 1.) There, like here, the plaintiffs were investors on the exchange and lost everything when Mt. Gox went dark in February 2014. And there, like here, the plaintiffs assert claims against Mark Karpeles based on the same facts presented in this case.

But the similarities don't stop there. Once Karpeles appeared in *Greene*, he also moved to dismiss under Federal Rule of Civil Procedure 12(b)(2), where he submitted a nearly-identical supporting declaration and nearly-identical arguments that personal jurisdiction was lacking. After full briefing, the *Greene* court denied Karpeles's motion in full, finding that (i) Karpeles, through his virtual contacts at Mt. Gox, "deliberate[ly] and continuous[ly] exploit[ed]" the Illinois market and, thus, had a "constitutionally sufficient connection with Illinois to justify the exercise of specific jurisdiction," (ii) the plaintiffs' claims arose from that exploitation, and (iii) based on his "expansive, sophisticated commercial venture online . . . [Karpeles] was apparently successful in reaching consumers across the country" and, thus, there was nothing constitutionally unfair about allowing Illinois to assert personal jurisdiction over him. *Greene v. Karpeles*, No. 14 C 1437, 2019 WL 1125796, at *8, *10 (N.D. Ill. Mar. 12, 2019).

The same reasoning is dispositive as to Karpeles's motion here. Indeed, the case for jurisdiction in Pennsylvania is stronger than it is in Illinois: Karpeles's forum-directed conduct resulted in *more* business from Pennsylvania residents and, moreover, anchors the claims asserted against him here. And in light of his substantial connection with the forum, there's absolutely nothing unfair about Pennsylvania asserting personal jurisdiction over him.

Karpeles's motion to dismiss should be denied.

1

**FACTUAL BACKGROUND**

Defendant Mark Karpeles developed and operated the Mt. Gox bitcoin exchange, which in its heyday was the largest bitcoin exchange in the world. (Dkt. 1, Class Action Complaint ("Compl.") ¶ 14.) As its CEO, Karpeles controlled all aspects of Mt. Gox's day-to-day operations. (*Id*.) On its website, Mt. Gox, at Karpeles's direction, represented that it would keep users' bitcoins safe, and promised through its Terms of Use that users could retrieve any bitcoins or cash they had deposited with Mt. Gox. (Compl. ¶¶ 9, 10, 15, 68.)

These representations were not true. Mt. Gox's troubles began in 2011 when Karpeles discovered an issue with Mt. Gox's code that allowed bad actors to steal bitcoins from supposedly secure bitcoin wallets. (Compl. ¶¶ 16-17, 36-38.) Karpeles did not disclose this "bug," and Mt. Gox continued to grow, as customers relied on Mt. Gox's promises of safety and security. (*Id*.)

A new issue emerged in 2013. At that point, Karpeles had elected to keep Mt. Gox's deposit accounts at Mizuho Bank. *See Greene v. Mizuho Bank, Ltd.*, No. 14 C 1437, 2018 WL 2735112, at *2 (N.D. Ill. June 7, 2018) (class certification decision). Karpeles had tens of thousands of customers located outside of Japan, and needed a bank that could quickly and efficiently wire money from Mt. Gox's accounts around the globe, and which could accept wire transfers from around the globe. (Compl. ¶¶18-21.) Mizuho Bank, Japan's largest financial institution, fit that bill. But the volume of transactions Mizuho was processing on Mt. Gox's behalf began to worry the bank, and bank representatives asked Karpeles to take Mt. Gox's business elsewhere. *Greene*, 2018 WL 2735112, at *2. (Compl. ¶¶ 22-24.) To speed the process along, Mizuho then refused to process any outbound international wire requests from Mt. Gox's bank account. (Compl. ¶ 24.) This new policy caused serious problems for Mt. Gox customers,

which were the subject of widespread coverage in cryptocurrency-focused press. (Compl. ¶¶ 26, 48.) But as the *Greene* court observed, many of these news reports were unable to correctly diagnose the issues plaguing Mt. Gox. *Greene v. Mizuho Bank Ltd.*, 206 F. Supp. 3d 1362, 1375 (N.D. Ill. 2016). And for good reason: neither Karpeles nor Mizuho Bank said anything about Mizuho's new policy regarding Mt. Gox's accounts. (Compl. ¶¶ 29-34.) And "[d]espite growing problems with the exchange's reliability and security, Karpeles repeatedly assured customers and the public that delays in processing transactions were due to a temporary backlog and that users' assets were safe." *Greene*, 2019 WL 1125796, at *3 (N.D. Ill. Mar. 12, 2019). (*See* Compl. ¶ 29.) Of course, they were not. In February 2014, Karpeles shuttered the exchange and filed for bankruptcy. (Compl. ¶¶ 35-36.) When he did, thousands of customers were unable to retrieve their bitcoin or currency they had deposited with Mt. Gox. *See Greene*, 2018 WL 2735112, at *2.

One of those customers was Gregory Scott Pearce. Pearce joined Mt. Gox in November 2013, after reading about the exchange's security, reliability, and ability to withdraw or deposit bitcoins and/or cash at any time. (Compl. ¶¶ 42-43.) Relying on those representations, Pearce transferred bitcoins onto the Mt. Gox exchange. (Compl. ¶ 43.) Shortly after joining, Pearce attempted to "verify" his Mt. Gox account by providing the exchange with proof of his identity and address in Pennsylvania. (Decl. of Gregory Pearce ("Pearce Decl.") ¶ 2.) He also, at Mt. Gox's suggestion, ordered a "YubiKey" through the Mt. Gox website—a physical device that provided an extra layer of security for exchange account holders. (*Id.* at ¶ 3.) Karpeles's agents mailed the YubiKey to Pearce's home address in West Chester, Pennsylvania. (*Id.*) The device was mailed by Karpeles's company, Tibanne KK (of which Karpeles was the sole shareholder) and included a letter written on Mt. Gox letterhead and addressed to Pearce's home address. (*Id.*)

In January 2014, Pearce converted some of his bitcoin holdings to cash and attempted to withdraw $5,900 USD from his Mt. Gox account. (Compl. ¶ 45.) The request went unfulfilled. (Compl. ¶¶ 46-47.) Then, based on emerging news reports about the status of Mt. Gox, Pearce attempted to cancel the cash withdrawal and move his bitcoin balance out of the exchange. (Compl. ¶ 48.) This also failed. (*Id.*) As a result, Pearce lost the entirety of his holdings on Mt. Gox after the Exchange went silent in February 2014. (Compl. ¶¶ 48-49.)

## ARGUMENT

When a motion to dismiss raises the issue of personal jurisdiction, a plaintiff must make a *prima facie* showing of jurisdictional facts. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). He may do so through the complaint, affidavits, and other competent evidence. *Id.* In making such a showing, plaintiffs are entitled to have all jurisdictional allegations taken as true and all factual disputes resolved in their favor. *Id.* at 330–31. Where a defendant submits an opposing affidavit that *conflicts* with the plaintiff's allegations, however, a "plaintiff must present similar evidence in support. . . ." *Isaacs v. Trs. of Dartmouth College*, No. 13-5708, 2014 WL 4186536, at *5 (E.D. Pa. Aug. 25, 2014) (citing *Patterson by Patterson v. FBI*, 893 F.2d 595, 603–04 (3rd Cir. 1990); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009)).

Pennsylvania's long-arm statute authorizes this Court to exercise personal jurisdiction to the full extent permitted by due process. *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998) (citing 42 Pa. Cons. Stat. Ann. § 5322). Under the traditional inquiry, federal courts may exercise specific personal jurisdiction over nonresident defendants when (1) they have purposefully directed their conduct towards a resident of the forum state, (2) the claims arise from that conduct, and (3) exercising jurisdiction comports with notions of fair play and

4

substantial justice. *Walden v. Fiore*, 134 S. Ct. 1115, 1124 (2013); *Metcalfe*, 566 F.3d at 334. For intentional torts, a plaintiff may also satisfy the "effects test" expressed in *Calder v. Jones*, which requires proof that "the defendant . . . 'expressly aimed' its conduct at the forum. *Ceelite Techs., LLC v. SeeLite, LLC*, No. CV 15-4342, 2016 WL 9738109, at *2 (E.D. Pa. Oct. 5, 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)). The jurisdictional inquiry is "fact-sensitive," and the nature of the claim or tort at issue affects the analysis of whether a party has purposefully directed their conduct at the forum. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 323 (3d Cir. 2007); *see Walden*, 134 S. Ct. at 1123 (discussing *Calder v. Jones*, 465 U.S. 783 (1984) and noting that nature of reputation-based effects of libel justified specific jurisdiction over out-of-state article publisher who knowingly caused reputational injury in California). A "single act" can support jurisdiction, in light of the particular claims alleged. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985).

Here, this Court should have little trouble finding that Pennsylvania may assert personal jurisdiction over Mark Karpeles in this lawsuit. Karpeles deliberately and continuously exploited the Pennsylvania market through his virtual presence in the state, which gave rise to the claims Pearce asserts now. And while Karpeles is a foreign litigant, his significant presence in the state cuts sharply against the unsupported suggestion that these proceedings are in any way unfair.

I.   **PEARCE'S CLAIMS RELATE TO KARPELES'S MINIMUM CONTACTS WITH PENNSYLVANIA**

Because Karpeles purposefully (and successfully) solicited the business of thousands of Pennsylvanians through his virtual presence in the state, there's no question that he should have "reasonably anticipate[d] being haled into court [in Pennsylvania]." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). Further, because Karpeles's conduct gave rise to the claims at issue in this case, specific jurisdiction exists here.

5

"Ascertaining specific personal jurisdiction in claims arising from Internet commerce requires courts to determine whether a defendant established minimum contacts through cyberspace." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1123–24 (W.D. Pa. 1997)). The inquiry depends on the "nature and quality of commercial activity that [a defendant] conducts over the Internet." *Ackourey*, 573 F. App'x at 212 (quoting *Zippo Mfg.*, 952 F.Supp. at 1124). *See also S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 540 (E.D. Pa. 1999) ("The Court will consider the quality and quantity of contacts with the plaintiff's jurisdiction to which the Internet site has given rise in determining whether personal jurisdiction may be exercised."). Where a website passively communicates information that is accessible in a given form, it is unlikely that personal jurisdiction exists. *Ackourey*, 573 F. App'x at 212 (citing *Zippo Mfg.*, 952 F.Supp. at 1124). But "where a defendant uses an interactive commercial website to actively transact business with residents of the forum state . . . personal jurisdiction exists." *Id.* at 211 (internal parentheses omitted) (citing *Zippo Mfg.*, 952 F.Supp. at 1124). *Accord Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 726 (3d Cir. 2009) ("For such 'active' defendants, the exercise of personal jurisdiction is proper."). The focus is whether there is "some deliberate action aimed at the forum, such as transactions between the defendant and residents of the forum." *Ackourey v. Andre Lani Custom Clothiers*, No. CIV.A. 12-1686, 2012 WL 5944677, at *6 (E.D. Pa. Nov. 28, 2012) (citing *Toys "R" Us, Inc. v. Step Two S.A.*, 318 F.3d 446, 452 (3rd Cir. 2003)).

Here, the quality and quantity of Mt. Gox's virtual commercial contact with Pennsylvania demonstrates that Karpeles directed significant conduct at the forum.[1] In terms of quality, there's no question that the Mt. Gox website was "highly 'interactive,'" "allow[ed] customers the opportunity to enter directly into a contract with [Mt. Gox] over the internet," and was " 'central' to [Karpeles's] business in the forum state . . . ." *Ackourey*, 2012 WL 5944677, at *5 (quoting *O'Connor v. Sandy Lane Hotel Co.*, No. 04-cv-2436, 2005 WL 994617, at *3 (E.D. Pa. Apr. 28, 2005)). Indeed, the *entirety* of Karpeles's business—including all activity directed at Pennsylvania—was coordinated through the website, which let users: (i) open accounts, (ii) manage accounts, (iii) "verify" accounts by providing Mt. Gox with proof of residency, (iv) communicate directly with the Mt. Gox customer support desk, (v) trade bitcoins for cash, or vice versa, and (vi) initiate withdrawals or transfers off the exchange. (Compl. ¶¶ 10-12, 42, 45-47; Pearce Decl. ¶¶ 2-4.) These measures resulted in a significant number of contacts with the state. Karpeles himself confirms that Mt. Gox maintained over 19,000 known Pennsylvanian user accounts, which comprised "approximately 2% of all [Mt. Gox's] accounts and approximately 4% of those accounts with addresses." (Dkt. 20-2 ¶ 15.) *See Zippo Mfg.*, 952 F. Supp. at 1121, 1125-26 (rejecting contention that defendant was "merely running a website" where 2% of the defendant's online subscribers (3,000 persons in total) were Pennsylvania residents). Accordingly, and as the *Greene* court found with respect to Mt. Gox's presence in Illinois (where the exchange maintained 7,056 user accounts), Karpeles's contacts with

---

[1] While the typical *Zippo* analysis is done with respect to the traditional minimum contacts test, all the considerations discussed herein would also satisfy the *Calder* test's third requirement of express aiming. *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (both tests are "cut from the same cloth"). And here, Karpeles admits both that Pearce alleges an intentional tort and that "Pennsylvania can be said to be the focal point of [Karpeles's] alleged fraud." (Mot. at 14.) Thus, whether considered under the traditional or *Calder* analysis, personal jurisdiction lies here.

7

Pennsylvania "were not random, isolated, or fortuitous, but rather the product of Mt. Gox's virtual presence in [the state]." *Greene*, 2019 WL 1125796, at *7. *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) ("[R]egular monthly sales of thousands of magazines cannot by any stretch of the imagination be described as random, isolated, or fortuitous.").

Further, Pearce's claims arise from the conduct Karpeles directed towards the state.[2] As the *Greene* court found, because Karpeles used Mt. Gox's online platform to "encourage[] users to create and maintain accounts . . . Karpeles—who was responsible for the security of assets that users like [Pearce] placed with Mt. Gox—served in a position of trust that gave rise to ongoing obligations toward and interactions with Mt. Gox users and their property." *Greene*, 2019 WL 1125796, at *7. But despite this position and constant stream of contacts between Mt. Gox and its customers, Karpeles withheld critical information from Pearce and other exchange users concerning, for example, Mt. Gox's software and withdrawal issues, and also mismanaged their investments. (Compl. ¶¶ 29-31, 33-34.) Thus, because Pearce relied "on Karpeles's promises about Mt. Gox's security" when deciding to open an account and maintain his investment, his claims arise from Karpeles's forum-directed activity. *Greene*, 2019 WL 1125796, *7. (Compl. ¶¶ 42, 46-47, 50-51.)

Karpeles makes limited efforts to push back on this outcome. Primarily, he cites the Court's dismissal of the claim against Mizuho Bank and says that the case should be dismissed against him as well. (Mot. at 12 (suggesting that Pearce claims for negligence and fraud address

---

[2] Karpeles purports to devote a section of his brief addressing whether Pearce's injuries "arise out of" Karpeles's conduct. (Mot. at 11.) But the section *only* discusses whether Karpeles's directed conduct towards Pennsylvania. (*See id.* at 11-12.) Thus, Karpeles has waived any argument that his forum-directed conduct did not give rise to Pearce's claims in this case. *See FDIC v. Deglau*, 207 F.3d 153, 169 (3d Cir.2000) (party waives arguments not raised in opening brief).

8

Karpeles's "negative actions").) The argument is misguided. The Court found there was no personal jurisdiction over Mizuho because "Mizuho never engaged in any transactional contact with Pearce" or Pennsylvania at all. (Dkt. 15 at 11.) (*See also id.* at 12 (finding that Pearce did not allege Mizuho directed any "activities . . . at Pennsylvania.").) That is not the case here. As described above, Pearce alleges that Karpeles actively solicited business from him and over 19,000 other Pennsylvanian investors, mismanaged their investments, and then affirmatively misled them by failing to disclose the dysfunctional state of affairs at Mt. Gox. Karpeles's contacts with the forum were substantial.

Moreover, Karpeles's interactions with Pearce (through his agents at Mt. Gox) put him on specific notice of Pearce's Pennsylvania residency. At Mt. Gox's direction, Pearce provided the exchange with a utility bill (bearing his home address) for the purpose of "verifying" his Mt. Gox account and also ordered a physical security device from the Mt. Gox website to his home address in Pennsylvania. (Pearce Decl. ¶¶ 2-3.) *See Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 398 (M.D. Pa. 2013) (finding specific jurisdiction where, *inter alia*, "Defendant's website allowed Pennsylvania residents to make purchases through the site; it was actually utilized to purchase a product that was subsequently shipped into Pennsylvania. . . ."). And like the court found in *Greene*, this conduct additionally supports a finding that Karpeles knew (or should have known) that he was interacting with Pennsylvania residents. *See Greene*, 2019 WL 1125796, at *7 ("[B]efore Mt. Gox ceased operations on February 24, 2014, Greene and Motto notified the Karpeles-managed user support desk of their Illinois connection.").

Karpeles also suggests that because his alleged actions did not single out Pennsylvania users, they do not amount to purposeful direction toward the state. (Mot. at 12.) But a defendant may "purposefully avail" itself of conducting activity in a forum state by "knowingly interacting

9

with the residents of the forum state." *Toys "R" Us, S.A.*, 318 F.3d at 452-53. *Accord Greene*, 2019 WL 1125796, at *6 ("[I]t is not necessary for Karpeles to have singled out Illinois for his business activities."). That is precisely what happened here. Karpeles admits that he, through Mt. Gox, had significant "transactions . . . with residents of the forum"—evidenced by the creation of more than 19,000 Pennsylvania-based accounts—which is enough to show "deliberate action aimed at [Pennsylvania]." *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, 321 F. Supp. 3d 546, 557 (E.D. Pa. 2018) (citation omitted). *See also Greene*, 2019 WL 1125796, at *7 (rejecting identical "targeting" argument).

Finally, Karpeles suggests there were aspects of Mt. Gox where his role was limited and that he did not personally communicate with Pearce. (Dkt. 20-2 at ¶¶ 17-20; Mot. at 12.) But as was the case in *Greene*, Karpeles does not dispute Pearce's allegations that Karpeles generally controlled and directed Mt. Gox's operations and outreach. *See Greene*, 2019 WL 1125796, at *2 (finding that "[a]s Mt. Gox's President and CEO, Karpeles 'controlled all aspects of Mt. Gox's business from the ground up,' including software design and operation, public and customer interactions, and accounting practices.") Thus, "[a]lthough Karpeles did not himself make [any] alleged misrepresentations to [Pearce], it is enough that he (allegedly) directed his agents to do so given that the agents had notice that the communications concerned Mt. Gox's business with individuals in [Pennsylvania]." *Id.* at *8.

For all these reasons, Karpeles is subject to specific jurisdiction in Pennsylvania.

## II.   THE EXERCISE OF JURISDICTION DOES NOT OFFEND NOTIONS OF FAIR PLAY OR SUBSTANTIAL JUSTICE

Karpeles also contends—briefly—that the exercise of personal jurisdiction does not comport with fair play or substantial justice. (Mot. at 8-9.) To prevail on this point, Karpeles must present a "compelling case" that jurisdiction does not comport with due process. *Burger*

*King*, 471 U.S. at 477. The court in *Greene* already took up and rejected the argument. *Greene*, 2019 WL 1125796, at *8-*10. This Court should as well.

First, Karpeles notes that he currently resides in and cannot leave Japan. (Mot. at 13.) Living outside a jurisdiction is a burden for every foreign litigant. *See Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114 (1987). But presence outside the forum alone "clearly does not rise to the level of compelling circumstances contemplated by the Supreme Court." *Franklin Mint Co. v. Camdex Int'l, Inc.*, No. CIV. A. 99-4170, 2000 WL 274010, at *4 (E.D. Pa. Mar. 10, 2000) (citing *Burger King*, 471 U.S. at 477). Further, the reason Karpeles cannot leave Japan is that, consistent with the allegations of fraud asserted here, he is serving a suspended sentence for doctoring Mt. Gox's company records.[3] Karpeles should not be permitted to avoid accountability for the *additional* acts of fraud alleged here because of his own wrongdoing. *See Streit v. Metro. Cas. Ins. Co.*, 863 F.3d 770, 774 (7th Cir. 2017) (quoting *Messersmith v. Am. Fid. Co.*, 232 N.Y. 161, 133 N.E. 432, 433 (1921) ("This is rooted in the common-sense principle best stated by Judge Cardozo: '[N]o one shall be permitted to take advantage of his own wrong.'"). Besides, and as the *Greene* court noted, the Federal Rules of Civil Procedure can alleviate any burdens created by Karpeles's tenure in Japan, which provide "options to address [Karpeles's] concern short of denying personal jurisdiction entirety." *Greene*, 2019 WL 1125796, at *9 (quoting *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012)).

---

[3] Karpeles was only convicted of, and received a suspended prison sentence for, data manipulation. Articles reporting on the Karpeles's trial note that while he was also charged with embezzling ¥341 million from Mt. Gox's customers, a conviction wasn't possible because "the company did not have a propoer accounting system in place for when its executives borrowed money from the company." *See* Magdalena Osumi & Ryusei Takahashi, *Mt. Gox bitcoin exchange founder Mark Karpeles gets suspended term for falsifying data but is cleared of embezzlement*, The Japan Times (Mar. 15, 2019), https://www.japantimes.co.jp/news/2019/03/15/national/crime-legal/mtgox/#.XMODvpNKhTY.

11

Second, Karpeles suggests that Pennsylvania "has no particular interest" in adjudicating this dispute. (Mot. at 14.) The argument is frivolous. Pennsylvania, like every other state, has a significant interest in providing a forum where its residents can seek redress for their injuries. *See Burger King*, 471 U.S. at 473. The fact Pearce's claims have ties to Japan does not negate Pennsylvania's interest in protecting its citizens. *See Baskin-Robbins Franchising LLP v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 40 (1st Cir. 2016) (rejecting argument that Massachusetts had no interest in dispute brought by injured citizen because it involved an agreement executed in California, governed by Washington law, and requiring performance elsewhere, further noting that forum state's interest "need not be exclusive").

Third, Karpeles implies that because the Mt. Gox exchange is undergoing Japanese civil rehabilitation proceedings, proceeding with this lawsuit is not an "efficient resolution." (Mot. at 14.) But the Japanese proceedings have been underway since 2014, and nothing has come of them.[4] Thus, the speculative *possibility* of partial or whole relief does not extinguish Pearce's or Pennsylvania's interest in these proceedings. *See Greene*, 2019 WL 1125796, at *9 ("[N]either Illinois's nor Plaintiffs' interests are extinguished by the possibility that Mt. Gox's civil rehabilitation proceedings will partially or fully refund Plaintiffs what they lost on the exchange . . . [because] the possibility of full relief in the Japanese proceedings speculative at this point[.]").

## CONCLUSION

Karpeles's motion to dismiss should be denied in its entirety.

---

[4] Most recently, the trustee appointed to manage the Japanese proceedings announced—once again—that there would be a significant delay (until October 2019, at the very earliest) before any formal rehabilitation was even submitted for approval by claimants and/or the Japanese courts. The notice concerning that delay is available on the Mt. Gox website at https://www.mtgox.com/img/pdf/20190425_announcement_en.pdf (last visited May 2, 2019).

Dated: May 2, 2019                              Respectfully submitted,

 By: /s/ Rafey S. Balabanian
*One of Plaintiff's Attorneys*

Rafey S. Balabanian (pro hac vice)
rbalabanian@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 2, 2019, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                                          /s/ Rafey S. Balabanian