**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY PEARCE, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| MARK KARPELES, an individual, | : | |
| | : | No. 18-00306(RK) |
| | : | |
| Defendant. | : | |

**DEFENDANT MARK KARPELES' MEMORANDUM OF LAW
IN SUPPORT OF HIS REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)**

Dated:  May 13, 2019

*Albert A. Ciardi, III, Esquire*
PA Attorney ID No.: 63598
*Jennifer C. McEntee, Esquire*
PA Attorney ID No.: 204079
**CIARDI CIARDI & ASTIN**
One Commerce Square
2005 Market Street, Suite 3500
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi@ciardilaw.com
jcranston@ciardilaw.com

*Counsel for Defendant Mark Karpeles*

Defendant Mark Karpeles (hereinafter "Mr. Karpeles" or the "Defendant"), by and through undersigned counsel, hereby submits his memorandum of law in support of his reply to the Plaintiff's Opposition to the Defendant's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Reply"), (the "Motion to Dismiss").

## INTRODUCTION

In his Opposition to Defendant's Motion to Dismiss (the "Opposition"), the Plaintiff relies heavily, if not exclusively, upon an opinion in *Greene v. Karpeles*, No. 14 C 1437, 2019 WL 1125796 (N.D. Ill. Mar. 12, 2019). Importantly, despite the best wishes of the Plaintiff, there was no finding in *Greene* that Mt. Gox is the alter ego of the Defendant. Here, similarly, there is no finding of alter ego, no claim of alter ego made by the Plaintiff and no ***mention*** of alter ego by the Plaintiff. Yet, Plaintiff's entire argument supporting this Court's personal jurisdiction over the Defendant is based upon the literal interchangeability of "Mt. Gox" with "Mark Karpeles" in any given allegation in the Complaint. In fact, by Defendant's count, in its twelve (12) page memorandum of law in support of the Opposition, Plaintiff attributes the actions of Mt. Gox, a non-party to this action, and its agents directly to Mr. Karpeles at least twenty (20) times. Specifically, Plaintiff claims,

> "Karpeles's forum-directed conduct resulted in *more* business from Pennsylvania residents and, moreover, anchors the claims asserted against him here." *See* Opposition, Page 1.

> "Karpeles's agents mailed the Yubikey to Pearce's home address in West Chester, Pennsylvania. The device was mailed by Karpeles's company, Tibanne KK, and included a letter written on Mt. Gox letterhead..." *See* Opposition, Page 3.

> "Karpeles deliberately and continuously exploited the Pennsylvania market through his virtual presence in the [Commonwealth], which gave rise to the claims Pearce asserts now." *See* Opposition, Page 5.

> "Pearce's claims relate to Karpeles's minimum contacts with Pennsylvania." *See* Opposition, Page 5.

1

"Because Karpeles purposefully (and successfully) solicited the business of thousands of Pennsylvanians through his virtual presence in the state, there's no question that he should have "reasonably anticipate[d] being haled into court [in Pennsylvania]." *See* Opposition, Page 5 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"Because Karpeles's conduct gave rise to the claims at issue in this case, specific jurisdiction exists here." *See* Opposition, Page 5.

"Here, the quality and quantity of Mt. Gox's virtual commercial contact with Pennsylvania demonstrates that Karpeles directed significant conduct at the forum." *See* Opposition, Page 7.

"Indeed, the *entirety* of Karpeles's business – including a activity directed at Pennsylvania – was coordinated through the website…" *See* Opposition, Page 7.

"…Pearce alleges that Karpeles actively solicited business from him and over 19,000 Pennsylvanian investors, mismanaged their investments, and then affirmatively misled them by failing to disclose the dysfunctional state of affairs at Mt. Gox.  Karpeles's contacts with the forum were substantial." *See* Opposition, Page 9.

"Karpeles's interactions with Pearce (through his agents at Mt. Gox) put him on specific notice of Pearce's Pennsylvania residency." *See* Opposition, Page 9.

"That is precisely what happened here.  Karpeles admits that he, through Mt. Gox, had significant "transactions…with residents of the forum" – evidenced by the creation of more than 19,000 Pennsylvania-based accounts – which is enough to show "deliberate action aimed at [Pennsylvania]." *See* Opposition, Page 10 (citing *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, 321 F.Supp. 3d 546, 557 (E.D. Pa. 2018)).

However, while Mr. Karpeles created Mt. Gox and, during the period relevant to the Complaint, was the Chief Executive Officer of Mt. Gox as well as the sole shareholder and Chief Executive Officer of Tibanne KK, he is not the alter ego of either company and no such finding has been requested or substantiated in this matter. *See Compl.*, ¶4.  Therefore, Plaintiff's repeated and nearly exclusive argument that Mt. Gox's website, presence, and alleged contacts in Pennsylvania are attributable directly and solely to Mr. Karpeles is misplaced and without foundation in the record before the Court.

Equally as perplexing, at Page 8, footnote 2 of the Opposition, Plaintiff claims,

> "Karpeles purports to devote a section of his brief addressing whether Pearce's injuries "arise out of" Karpeles's conduct. (Mot. At 11.)  But the section *only* discusses whether Karpeles's [sic] directed conduct toward Pennsylvania. (*See id.* at 11-12.)  Thus, Karpeles has waived any argument that his forum-directed conduct did not give rise to Pearce's claims in this case. *See FDIC v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000) (party waives arguments not raised in opening brief).

Initially, Defendant submits *FDIC v. Deglau*, as well as its progeny, addresses a failure to mention or an inadequacy of treatment of error in appellate briefs.  Specifically, this case and cases like it cover issues raised (and not raised) on appeal and not in the context of a 12(b)(2) motion.  Moreover, the section of the Defendant's brief cited by Plaintiff discusses whether the ***alleged*** actions (negligence and fraud claims contained in the Complaint), as alleged, rise to the level of meeting Plaintiff's burden of proof with regard to personal jurisdiction and, specifically, whether Plaintiff adequately plead that these alleged actions targeted Pennsylvania.  Therefore and for the foregoing reasons, Defendant contends he has not waived an argument with regard to the ultimate question of fact: whether actions attributable to Defendant give rise to Plaintiff's claims.

## ARGUMENT

Plaintiff has failed to meet his burden of proving this Court has general or specific personal jurisdiction over the Defendant and, instead, leaps to a presumption of alter ego. "Mt. Gox" has not been found to be interchangeable with "Mr. Karpeles" and the actions of one have not been found to be directly attributable to the actions of the other.  The Complaint should be dismissed because Plaintiff fails to prove this court has personal jurisdiction over the Defendant – despite attempts at a back-door alter ego finding.

3

**I.       The Complaint Should be Dismissed because Allegations about Mt. Gox contained in the Complaint or subsequent Declaration in Support of the Opposition, are not automatically Imputed to the Defendant and Defendant, as an Individual, has had no Contact with Pennsylvania.**

This Court does not have personal jurisdiction over the Defendant. Initially, Defendant submits Mt. Gox was never registered to do business in Pennsylvania, did not maintain an office in Pennsylvania, and had no employees in Pennsylvania. *See Declaration of Mark Karpeles*, ¶9. Similarly, Defendant has never resided in Pennsylvania, owned property in Pennsylvania, or paid taxes in Pennsylvania. *Id.* at ¶4. Nor has Defendant ever maintained an office in Pennsylvania or any employees in Pennsylvania. *Id.* at ¶5. Moreover, there are no specific allegations in the Complaint showing such constant and pervasive affiliations between Mr. Karpeles and Pennsylvania such that it is reasonable to believe Mr. Karpeles is subject to general specific personal jurisdiction in Pennsylvania and may be haled into Pennsylvania's courts for any reason.

In certain situations, "jurisdiction over corporate officers in their personal capacities may be based on acts performed in their corporate capacity…" *Hyndman v. Johnson* No. Civ. A. 10-7131, 2011 WL 570088, *5, *not reported* F. Supp. 2d. (E.D. Pa. Feb. 15, 2011) (citing *Am. Intern. Airways, Inc. v. Am. Intern. Group, Inc.*, No. Civ. A. 90-7135, 1991 WL 87276, at *4 (E.D. Pa. May 21, 1991)). In deciding whether personal jurisdiction exists, courts should consider "the officer's role in the corporate structure, the nature and quality of the officer's forum contacts and the extent and nature of the officer's personal participation in the tortious conduct." *Id.* However, "when personal jurisdiction is based on an officer's corporate activities, only those actions taken within the forum state are to be considered in the jurisdictional analysis." *Id.* Otherwise, "an individual's transaction of business solely as an officer or agent of a corporation does not create personal jurisdiction over the individual." *Hyndman v. Johnson* No.

4

Civ. A. 10-7131, 2011 WL 570088, *4 (citing *Feld v. Tele-View, Inc.* 422 F. Supp. 1100, 1104

(E.D. Pa. 1976) (citing *Miller v. Am. Tele. & Tele. Co.*, 394 F. Supp. 58, 62-63 (E.D. Pa. 1975)).

In *Hyndman*, the Plaintiff alleged Defendant Johnson, an individual officer of co-defendant Back

In Time Classic, Street & Muscle Cars, Inc., "trades and does business under the name of Back

In Time Classic, Street & Muscle Cars, Inc." *Hyndman v. Johnson* No. Civ. A. 10-7131, 2011

WL 570088, *5.   The *Hyndman* Court noted that, while "Defendant Johnson identifies himself

as a shareholder of Back In Time Classic, Street & Muscle Cars, Inc...., [his] precise role in the

corporate structure of Back In Time Classic, Street & Muscle Cars, Inc. is not entirely clear." *Id.*

Nonetheless, the *Hyndman* Court found,

> "[e]ven without a more thorough understanding of Defendant Johnson's corporate
> position, however, the Court is able to conclude that it lacks personal jurisdiction
> over him in this case [because] Plaintiff has not alleged that Defendant Johnson
> has any contacts with Pennsylvania in his personal capacity or that any of his
> activities as a corporate officer or agent of Back In Time Classic, Street & Muscle
> Cars, Inc. took place in Pennsylvania.  Indeed, as Defendants note, the telephone
> calls between Plaintiff and Defendant Johnson "were clearly made on behalf of
> Defendant Back In Time Classic, Street & Muscle Cars, Inc., not Johnson
> individually.  Johnson could not reasonably foresee being subjected to litigation
> against him as an individual in a foreign forum in such circumstances."

*Id.* Here, the Plaintiff makes a general statement at paragraph 7 of the Complaint that this court

has personal jurisdiction over [Mr. Karpeles] because [he] conducted business in this District and

the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated

from this District. *See* Compl. ¶7.  However, Plaintiff fails to provide a single instance where

Mr. Karpeles purposefully directed activities at Pennsylvania.  In fact, according to the Plaintiff,

the only arguable contact Mr. Karpeles had with Pennsylvania was through the Mt. Gox website.

Specifically, Plaintiff alleges,

> "In fact Karpeles was involved in nearly every detail of the Exchange,
> from the technical (Karpeles wrote and designed the software used to run
> Mt. Gox) to the operational (Karpeles handled all of Mt. Gox's third party

5

negotiations and contracts). *See Compl.* ¶14. Karpeles likewise directed the drafting and dissemination of Mt. Gox's public statements and representations (including those made through its Terms of Use), as well the [sic] statements made through Mt. Gox's customer service department. In addition, Karpeles handled all aspects of Mt. Gox's accounting (including its maintenance of use and operational accounts) and banking affairs ..." *Id.* at ¶15.

None of the foregoing allegations relate back to specific actions or activities directed at Pennsylvania by Mr. Karpeles as an individual. Indeed, even in the *Hyndman* matter, Plaintiff alleged phone calls between Plaintiff and Defendant Johnson as evidence of Defendant Johnson directing actions at Pennsylvania. The Plaintiff in the matter before this Court, however, fails to point to so much as a single contact between Mr. Karpeles, the individual, and the Commonwealth of Pennsylvania, Pearce, or any other Pennsylvanian.

Moreover, while Mr. Karpeles created Mt. Gox, he, in no way, was involved in the minutia of direct client communications such that he was aware of customer service and support desk inquiries. *See Declaration of Mark Karpeles*, ¶¶19-20. Mr. Karpeles personally did not know whether or how many account-holders were located in Pennsylvania at the times referenced in the Complaint, and never met, spoke to, or corresponded with the named Plaintiff in this suit. *Id.* at ¶¶15-16. Similarly, Mr. Karpeles did not direct advertising on behalf of Mt. Gox and was not responsible for the day-to-day accounting functions of Mt. Gox. *Id.* at ¶19.

Finally, Plaintiff neither alleges nor requests this Court to disregard the corporate form and attribute Mt. Gox's alleged contacts with the forum to Defendant Karpeles individually because Plaintiff would rather use the two names interchangeably because he cannot point to a single instance when Mr. Karpeles, an individual, had contact with the Plaintiff or with Pennsylvania.

6

## PRAYER FOR RELIEF

WHEREFORE, for all of the reasons stated above, those in any further written

submissions to the Court, and in any oral argument, Defendant Mark Karpeles respectfully

requests that this Court:

A.   Grant this Motion to Dismiss these proceedings against him with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction;

B.   In the alternative, set a briefing schedule on this Motion to Dismiss and continue it to a later date;

C.   Subject to his continuing objection that this Court lacks personal jurisdiction over him, conduct no further proceedings in this matter until the issue of personal jurisdiction has been decided; and

D.   Grant all other just relief.

Respectfully submitted,

**CIARDI CIARDI & ASTIN**

*/s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
PA Attorney ID No.: 63598
Jennifer C. McEntee, Esquire
PA Attorney ID No.: 204079
One Commerce Square
2005 Market Street, Suite 3500
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi@ciardilaw.com
jcranston@ciardilaw.com
*Counsel for Defendant Mark Karpeles*

7